385 So.2d 630 (1980)
Wiley Lamar COOPER
v.
ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, INC.
79-130.
Supreme Court of Alabama.
June 6, 1980.
Rehearing Denied July 9, 1980.
John T. Crowder, Jr., of Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellant.
Thomas M. Galloway, Jr., of Collins, Galloway & Smith, Mobile, for appellee.
BEATTY, Justice.
This appeal is from a Mobile County Circuit Court order granting a motion for summary judgment in favor of defendant Alabama Farm Bureau Mutual Casualty Insurance Company (Farm Bureau). We reverse and remand.
Plaintiff Wiley Cooper owned a Farm Bureau insurance policy covering his pickup truck. Cooper was involved in an accident and filed a claim with Robert Anderton, an agent for Farm Bureau. A dispute between Farm Bureau and Cooper arose concerning whether the truck should be repaired or "totalled." At this time the plaintiff's pickup was stored in a garage in Robertsdale, Alabama. While located there it burned from an undetermined cause.
Subsequently, Anderton had a conversation about the fire incident with Robert Gulledge whose bank had made a loan to Cooper on the pickup truck. According to Cooper's complaint, Anderton defamed Cooper during that conversation by implying that Cooper had intentionally burned his pickup truck. Cooper filed suit in this action against Anderton and Farm Bureau for slander. Farm Bureau moved for summary judgment filing an affidavit stating that the company had neither previously authorized nor subsequently ratified the statement made by Anderton. The trial court granted the motion and Cooper appealed.
This jurisdiction has consistently held that a corporation will not be held liable for a slanderous utterance made by a corporation's agent unless the corporation previously authorized or subsequently ratified the slanderous utterance; it has been held insufficient to show that the corporation's agent was acting within the line and scope of his employment. This rule was first enunciated in Singer Manufacturing Co. v. Taylor, 150 Ala. 574, 43 So. 210 (1907), and has been reaffirmed in all subsequent cases. McIntyre v. Cudahy Packing Co., 179 Ala. 404, 60 So. 848 (1913); Republic Iron & Steel Co. v. Self, 192 Ala. 403, 68 So. 328 (1915); Choctaw Coal & Mining Co. v. Lillich, 204 Ala. 533, 86 So. 383 (1920); National Life Insurance Co. v. Abernathy, 206 Ala. 26, 89 So. 725 (1921); Luquire Insurance Co. v. Parker, 241 Ala. 621, 4 So.2d 259 (1941); Weaver v. Darling Stores, 243 Ala. 65, 8 So.2d 575 (1942).
*631 The underlying rationale of the Singer case was that slander should be distinguished from libel and other torts in that slander is, by its nature, an individual act. The Court, in Singer, stated, 150 Ala. at 577-78, 43 So. at 210-11:
The offense of slander is essentially single, differing in this respect from libel. In Cooley on Torts, p. 124, it is said: "Some wrongs are in their nature necessarily individual, because it is impossible that two or more should together commit them. The case of the oral utterance of defamatory words is an instance. This is an individual act, because there can be no joint utterance. He alone can be liable who spoke the words; and, if two or more utter the slander at the same time, still the utterance of each is individual, and must be the subject of a separate proceeding for redress." See, also, 13 Ency.Pl. & Pr. p. 30.
The liability of the principal for the torts of the agent, when not based upon a breach of duty arising out of contract, as in the case of common carriers, is based upon principles of public policy. It is essential to such liability that the tort of the agent, if not authorized or ratified by the principal, should be committed by the agent in the course of the business of the principal and of the agent's employment. By reason of the fact that the offense of slander is the voluntary and tortious act of the speaker, and is more likely to be the expression of momentary passion or excitement of the agent, it is, we think, rightly held that the utterance of slanderous words must be ascribed "to the personal malice of the agent, rather than to an act performed in the course of his employment and in aid of the interest of his employer, and exonerating the company unless it authorized or approved or ratified the act of the agent in uttering the particular slander."10 Cyc. p. 1216. Mr. Odgers, in his work on Libel and Slander (star page 368), states the doctrine in this language: "A corporation will not, it is submitted, be liable for any slander uttered by an officer, even though he be acting honestly for the benefit of the company and within the scope of his duties, unless it be proved that the corporation expressly ordered and directed that officer to say those very words; for a slander is the voluntary and tortious act of the speaker."
. . . . .
It is curious that this same reasoning can be applied to other torts which are by their natures individual acts, but for which the Court nevertheless has held a corporation liable in situations wherein the "individual acts" were done by agents of the corporation within the line and scope of the agents' employment. The Court has recognized that a corporation may be held liable for assault and battery, Alabama Fuel & Iron Co. v. Rice, 187 Ala. 458, 65 So. 402 (1913), even where the agent's acts of assault and battery may constitute homicide, Mount Vernon-Woodberry Mills v. Little, 222 Ala. 605, 133 So. 710 (1931); fraud and deceit, Standard Oil Company of Kentucky v. Gunn, 234 Ala. 598, 176 So. 332 (1937); trespass, Union Naval Stores Co. v. Pugh, 156 Ala. 369, 47 So. 48 (1908); false imprisonment, Owsley v. Montgomery & West Point Railroad Co., 37 Ala. 560 (1861); malicious prosecution, Jordan v. Alabama Great Southern Railroad Co., 74 Ala. 85 (1883); conspiracy, National Park Bank v. L. & N. R.R. Co., 199 Ala. 192, 74 So. 69 (1917); libel, Choctaw Coal & Mining Co. v. Lillich, 204 Ala. 533, 86 So. 383 (1920), and conversion, U-Haul Co. of Alabama v. Long, 382 So.2d 545 (Ala.1980). Corporations have also been held liable for punitive damages, Jefferson County Savings Bank v. Eborn, 84 Ala. 529, 4 So. 386 (1888), and in other jurisdictions, corporations have been held liable for conversion, Donnelly v. Levers & Sargeant Co., 226 Mass. 214, 115 N.E. 252 (1917); forcible entry and detainer, Iron Mountain & H. R. Co. v. Johnson, 119 U.S. 608, 7 S.Ct. 339, 30 L.Ed. 504 (1887); and intentional interference with business relations, Lichter v. Fulcher, 22 Tenn.App. 670, 125 S.W.2d 501 (1938). The test in all cases is whether the alleged tortious conduct was committed by the agent within the line and scope of his employment.
*632 We see no substantial legal distinction between the "individual act" of slander and the other "individual acts" for which we have already indicated the Court has held that a corporation may be liable. The overwhelming majority of jurisdictions have held that there is no distinction. See, e. g., Malvo v. J. C. Penney Company, Inc., 512 P.2d 575, 583-84 n. 13 (Alaska 1973); Baker v. Atlantic Coast Line R. Co., 141 Fla. 184, 192 So. 606 (1939); Dossett v. New York Mining & Manufacturing Co., 451 S.W.2d 843 (Ky.1970); Poledno v. Bendix Aviation Corp., 360 Mich. 129, 103 N.W.2d 789 (1960); Rivers v. Yazoo & M.V.R. Co., 90 Miss. 196, 43 So. 471 (1907). The consensus of commentators is also that there should be no distinction between the intentional tort of slander and other intentional torts. See, e. g., 9 Z. Cavitch, Business Organizations §§ 211.07(1)-(3) (1980); 10 C. Fletcher, Cyclopedia of the Law of Private Corporations § 4888, pp. 419-21 (Rev.ed.1978); W. Prosser, Handbook of the Law of Torts, 476-77, 479-80 (3d ed. 1964); Restatement (Second) of Agency §§ 247, 254 (1958).
Having reviewed the many cases in other jurisdictions and having analyzed the holdings of our earlier cases, it is our opinion that the better reasoned rule is that a corporation may be held liable for a slanderous utterance made by one of its agents if the slanderous utterance was made within the line and scope of the agent's employment. Singer Manufacturing Co. v. Taylor, supra, and other cases which hold to the contrary are hereby overruled.
Realizing that this result may be considered by some to be a departure from the doctrine of stare decisis, we direct attention to the dissent of the eminent Mr. Chief Justice Anderson in National Life Insurance Co. v. Abernathy, 206 Ala. 26, 29, 89 So. 725 (1921), in which, battling vigorously but unsuccessfully for the result we reach, he stated:
I fully appreciate the admonition in brief of appellant's counsel against departing from the rule of stare decisis, but while certainty and repose is desirable, it should not be founded upon a glaring and undebatable error, and the sooner that a structure, based upon a false foundation, is demolished, the better for our jurisprudence. "Where a grave and public and palpable error widely affecting the administration of justice must be either solemnly sanctioned or repudiated, fiat justitia, ruat coelum, should apply, and not the rule of stare decisis." Indeed, the false doctrine declared in the Owsley Case, [holding that a corporation could not be held liable for malicious prosecution if done by one of its agents] 37 Ala. remained the law in this state until repudiated and corrected in the Jordan Case nearly 20 years thereafter....
His view emerges victorious, albeit belatedly. See also, Justice Shores' opinion in Jackson v. City of Florence, 294 Ala. 592, 597-98, 320 So.2d 68 (1975):
No one believes in the validity of the rule of stare decisis and the necessity for stability in the law more than we do....
. . . . .
As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them...
This cause therefore is due to be reversed and remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, FAULKNER, JONES, ALMON and SHORES, JJ., concur.
EMBRY, J., dissents.
BLOODWORTH, J., not sitting.
EMBRY, Justice (dissenting):
I vigorously disagree because I deem the distinction between the rule regarding vicarious liability of a corporation for slanderous statements made by its agent and the rule regarding liability of a corporation for *633 a libel published by its agent to be based upon sound and logical principles.